**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Robbie Collins | ) | Civil Action No. 2:20-3752-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Nurse Belzer, K. Hill, Nurse McCloud, Nurse Williams, Nurse Elliott, Warden Stephen, A/W Ramos, Bryon Stirling, and Officer S. Young, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is the Magistrate Judge's Report and Recommendation ("R & R") that Defendants' motion for summary judgment be granted in part and denied in part. (Dkt. No. 125.) For the reasons set forth below, the Court adopts the R & R as the order of the Court.

**I.    Background**

Plaintiff is an incarcerated person proceeding *pro se* to claim violation of his constitutional rights pursuant to 42 U.S.C. § 1983. In the amended complaint, Plaintiff alleges that, while incarcerated at the Broad River Correctional Institution in 2020, he "had COVID-19" after being "placed in a cell that the previous occupant had coronavirus and the cell had not been sterilized." (Dkt. No. 10 at 1.) Defendants are employees of the South Carolina Department of Corrections ("SCDC").[1] Plaintiff alleges, *inter alia*, that he complained of his symptoms to nurses and Assistant Warden Ramos who "never helped" or "did nothing," that the Warden "failed to due [sic] any mass testing or contact tracing," and that Director Stirling "did not issue sanitation products or ensure that [inmates] could keep our immediate living area sanitized[.]" (*Id*. at 2-3.)

---

[1] Although Nurse Belzer's name is properly spelled "Belser" and Bryon Stirling's is properly spelled "Bryan," this order adopts the spellings as provided in the amended complaint.

Plaintiff alleges he "suffered in pain for 10 Ten weeks with no medical attention." (*Id*. at 2.) For this, Plaintiff brings a claim for violation of this Eighth Amendment right on the basis of deliberate indifference to a serious medical need against Defendants. (Dkt. No. 1.) Plaintiff states in his sur-reply that he brings the action against Defendants solely in their individual capacities. (Dkt. No. 120.)

Defendants move for summary judgment, arguing that they are all immune from suit under the Eleventh Amendment, that there is insufficient record evidence of Director Stirling and Warden Stephan participating in any alleged violation, that there is insufficient record evidence of the Nurses being deliberately indifferent to a serious medical need, that there is insufficient record evidence of Assistant Warden Ramos and Officer Young violating the Eighth Amendment, and that they are all entitled to qualified immunity even if there were a constitutional violation. (Dkt. No. 95-1.) The parties briefed the issues. (Dkt. Nos. 109, 114, 120.)

The Magistrate Judge makes the following recommendations: Dismiss the claim against Nurse Hill because there is insufficient record evidence that she was deliberately indifferent; retain the claims against Nurses Belzer, McCloud, Williams and Elliott because there is a record dispute that they were deliberately indifferent and they are not entitled to qualified immunity; dismiss the claim against Director Stirling because there is insufficient record evidence that he had a personal involvement in the alleged acts violating Plaintiff's rights; dismiss the claim against Warden Stephan because there is insufficient record evidence that he was deliberately indifferent; and dismiss the claims against Assistant Warden Ramos and Officer Young because there is insufficient record evidence that they were deliberately indifferent. (Dkt. No. 125.) Defendants filed an objection, in which they supplement the record and argue that the Nurses were not deliberately indifferent to Plaintiff's serious medical need. (Dkt. No. 132.)

## II. Legal Standard

### A. Review of the R & R

The Magistrate Judge makes only a recommendation that has no presumptive weight and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where there are specific objections to the R & R, the Court "makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. Where there are no objections to the R & R, the Court reviews the R & R to "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note; *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) ("In the absence of objection . . . we do not believe that it requires any explanation.").

### B. Motion for Summary Judgment

Rule 56 allows for summary judgment where the movant "shows that there is no genuine dispute as to any material fact" and it is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment should therefore be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant has the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant, in response, must demonstrate that specific, material facts exist that give rise to a genuine issue.

*Id.* "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence.'" *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III. Discussion

The Court affords this *pro se* Plaintiff's filings an appropriately liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In light of Defendants' objection to the R & R (Dkt. No. 132), the Court conducted a *de novo* review of the record, which consists of Plaintiff's medical records, correspondence, prison grievances, and a supplemental affidavit.

#### A. Director Stirling

The complaint alleges that Stirling "issued a memo on the kiosk that staff members didn't have to wear mask thus putting inmate's life in danger potentially being exposed to a deadly biochemical agent." (Dkt. No. 10 at 3.) The record does not appear to contain a memorandum issued by Stirling. (Dkt. Nos. 95-4, 114-1.) There is no record evidence that Stirling's individual actions violated Plaintiff's rights nor of Stirling's personal involvement in the conduct that Plaintiff alleges resulted in a constitutional violation. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Because vicarious liability is inapplicable to [ ] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* The Magistrate Judge recommends dismissing the claims against Stirling and the Court adopts the recommendation.

#### B. Warden Stephan

"(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials" may rise to the level of an Eighth Amendment violation. *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991). The deprivation must be more than "routine

discomfort," *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993), and the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference," *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). Plaintiff alleges that Stephan failed to order mass Covid-19 testing, released infected inmates into the general prison population, and failed to issue sanitation products for inmates to clean their cells.

Recently, in *Ross v. Russell*, the District Court for the Western District of Virginia addressed whether, on a Rule 12(b)(6) motion, an inmate plaintiff pled that the prison staff took steps that increased the possibility he would contract Covid-19, which he did contract, thereby showing deliberate indifference to the serious risk that the virus posed. 2022 WL 767093 (W.D. Va. Mar. 14, 2022). The court considered the inmate's allegations that he was not provided sanitation products and was moved into a cell that had not been sanitized after being inhabited by an infected inmate. Although ruling on a motion to dismiss, the court considered an appended record of fact that included medical records, grievances, and the jail's 2020 "Pandemic Virus Policy." The court found that risk of exposure to the virus satisfied the objective element of an Eighth Amendment conditions-of-confinement claim. *Ross*, 2022 WL 767093, at *10 (collecting cases). As to the deliberate indifference element of the claim, the court found that "the fact that defendants' efforts were unsuccessful does not meant that they were unconstitutional," especially where the record reflected that "the defendants tasked with creating the comprehensive pandemic policy, and the policy itself, was a reasonable attempt to respond to the known risk of COVID-19 exposure." *Id*. at *11-12.

The Court finds the *Ross* court's reasoning instructive here, where the record includes a March 14, 2020 SCDC "Covid-19 Action Plan" describing specific "measures being deployed by

the SCDC in order to mitigate the spread of COVID-19[.]" (Dkt. No. 114-1 at 2.) Plaintiff alleges that his injuries occurred in June 2020, and according to this record, by June 2020 SCDC had already disseminated it's March 2020 Action Plan to prison employees, such as Stephan. In implementing the Covid-19 Action Plan, the Court finds Stephan reasonably attempted to mitigate the known Covid-19 risks at the time. The Magistrate Judge recommends dismissing the claim against Stephan, and the Court adopts that recommendation.

**C.    Nurse Hill**

The Eighth Amendment protects prisoners from cruel and unusual living conditions. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To succeed on this claim, Plaintiff must demonstrate that he had a serious medical need to which Defendants acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This requires demonstrating "(1) that the deprivation of [a] basic human need was objectively sufficiently serious, and (2) that subjectively the officials act[ed] with a sufficiently culpable state of mind." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted). Regarding the first part of the test, a "serious medical need" is one diagnosed by a physician or so obvious that a lay person would recognize that a doctor's attention were necessary. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Regarding the second part of the test, "[d]eliberate indifference" requires the defendant's subjective knowledge and disregard of an excessive risk to the inmate's health. *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). This requires showing actual knowledge of the risk of harm. *Iko*, 535 F.3d at 241. "It is not enough that the officers should have recognized" the risk of harm. *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). It also requires showing that the defendant "recognized that his actions were insufficient to mitigate the risk of harm to the inmate rising from his medical needs." *Iko*, 535 F.3d at 241 (internal quotation marks omitted). At bottom, "[d]eliberate indifference is a very high standard—a showing of mere

negligence will not meet it." *Parrish ex rel. Lee*, 372 F.3d at 302; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (negligence does not rise to level of constitutional violation). The plaintiff must show that the defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (overruled on other grounds).

Plaintiff alleges that he wrote to Nurse Hill "explaining that I was sick with Covid-19 and medical refused to see me. She then responded back stating that mental health said I was okay. I then wrote back and explained that Mental Health counselor said that they do not deal with medical issues that K. Hill had lied because the Mental health ofc [sic] said no one spoke to her. She then responded that she contacted Nurse Elliot at my institution and she would come and see me. [I] was never seen." (Dkt. No. 10 at 1-2.) Plaintiff appends to the complaint a September 15, 2020 letter to Hill in which he states, "I wrote you about not receiving medical attention on 9/1/2020 you responded stating 'you had daily MH visits from your QMHP. You told her you were fine even great.' You lied in your response first the QMHP is a white male named louder, and I spoke with other Mental Health counselors even showed them your response and they all state you are lying." Hill wrote back five days later, "I was reading that information out of your electronic medical record, I don't enter the information I just tell you what I see." (Dkt. No. 1-1 at 6.)

Reviewing the allegations and record in a light most favorable to the non-movant, they reflect that Plaintiff experiencing severe Covid-19 symptoms constitutes a serious medical need. *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, "Long COVID or Post-COVID Conditions," (May 5, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects/). The allegations and record further reflect that Hill had actual knowledge of Plaintiff's condition, having reported his symptoms to Hill, but that Hill made an effort to assist Plaintiff,

such as by contacting Elliott and arranging for an examination. On this basis, the Magistrate Judge recommends dismissing the claim against Hill and the Court adopts that recommendation.

### D. Nurses Belser, McCloud, Williams, and Elliott

Plaintiff alleges that when he complained of loss of taste and smell, and of labored breathing, a nurse told him that "she would notify Nurse Belzer immediately but she never came." Plaintiff then wrote to Nurse Hill, who responded that "Nurse Elliot . . . would come and see me [but I] was never seen. I wrote Nurse Elliott explaining I was in pain my body hurt and I [couldn't] breathe it got so bad I had to bust window out and lay towards the window to [breathe]." Later, "Nurse Belzer came around passing pill line out and refused to help saying they knew about [the] situation. I then spoke to Nurse Williams [and] told her can't barely breathe and she [said] she would pull me out but never did." (Dkt. No. 10 at 1-2.) As discussed, Plaintiff experiencing severe Covid-19 symptoms constitutes a serious medical need and, taking the allegations and record in a light most favorable to the non-movant, Plaintiff has demonstrated that these Nurses had actual knowledge of the serious medical need. But the record contains material disputes of fact as to whether the Nurses disregarded that need. For instance, the record does not reflect that the Nurses referred him to the medical unit, physically examined, or treated Plaintiff.

The Nurses argue that the claim must nonetheless be dismissed because they are entitled to qualified immunity, which shields "[g]overnmental officials . . . from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). "A court need not ascertain whether plaintiff's evidence shows a Constitutional violation, because it may combine the two prongs of the qualified immunity inquiry by asking whether the plaintiff has allege[d] the violation of a clearly established constitutional right." *Pittman v. Nelms*, 87 F.3d 116, 119 (4th Cir. 1996) (internal quotation marks omitted). "If

the answer is affirmative, the court must determine whether the defendant knew or should have known that his conduct was illegal." *Id*. (internal quotation marks omitted). When examining whether the alleged violation infringed on a clearly established right, "the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *DiMeglio v. Haines*, 45 F.3d 790, 803 (4th Cir. 1995). To be clearly established, a law must be defined to such a degree that, in the particular context, it would alert the official that "what he is doing" violates constitutional principles. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). At the time of Plaintiff's alleged constitutional injury, it was clearly established law that an inmate has a constitutional right to adequate health care, born of "the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103.

On this basis, the Magistrate Judge recommends that the claims against Nurses Belzer, McCloud, Williams and Elliott not be dismissed. The Nurses object, first arguing that there is no record evidence that Plaintiff was diagnosed with Covid-19; instead, they argue, there is no record evidence that he was tested in June, July, August or September 2020; the record reflects that SCDC began testing inmates in April 2020, that Plaintiff tested negative in August 2021; refused to be tested in October 2021; tested negative on February 1, 2022; tested positive on February 9, 2022; and tested negative in April 2022. (Dkt. Nos. 132 at 3; 132-1.) But, more specifically, as the SCDC Director of Infectious Disease management attests, SCDC tested four inmates at Broad River in June 2020, but did not test Plaintiff; administered 145 tests in July 2020, but not to Plaintiff; administered 378 tests in August 2020, but not to Plaintiff; and administered 330 tests in September 2020, but not to Plaintiff. (Dkt. No. 132-1 ¶¶ 4-6.) Plaintiff alleges that the events giving rise to his claim occurred in June 2020 and he suffered for eight to ten weeks thereafter. (Dkt. No. 1 at 5.) Having carefully considered the Nurse's objection, the Court adopts the

Magistrate Judge's recommendation to deny Nurse Belzer, McCloud, Williams and Elliott's motion for summary judgment.

E.    **Assistant Warden Ramos and Officer Young**

Plaintiff alleges that after attempting to obtain help from the nurses, he "spoke to A/W Ramos and explain[ed] I needed [to be] seen because I had the coronavirus, he [said] the nurses are short of staff and they are seeing inmates in lockup only on general [pop]ulation. He did nothing to make medical see [me]. I suffered in pain for 10 ten weeks with no [med]ical attention." (Dkt. No. 10 at 2.)  Plaintiff alleges that Young, "on sheet and blanket day, sent the sheets and blankets back unwashed all 120 of them in one trashbags [sic]. We are in a pandemic with an outbreak on this yard and many deaths. For commissary Young to knowingly do this put my life in danger and violates my 8th Amendment right." (Dkt. No. 10-4.) Taking these allegations and the record in a light most favorable to the non-movant, they do not demonstrate a deliberate indifference to Plaintiff's serious medical need. The Magistrate Judge recommends dismissing the claims against Ramos and Young, and the Court adopts that recommendation.

IV.    **Conclusion**

For the foregoing reasons, the Court **ADOPTS** the R & R (Dkt. No. 195) as the order of the Court.  Defendants' motion for summary judgment (Dkt. No. 95) is **GRANTED IN PART and DENIED IN PART** as specified herein.  This matter is referred back to the Magistrate Judge for further pre-trial proceedings on the remaining claims.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

May 11, 2022

Charleston, South Carolina